# Exhibit A

COPY



# IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA
### 136 PRYOR STREET, ROOM C-103, ATLANTA, GEORGIA 30303
### SUMMONS

NORTHSIDE EXXON CORPORATION ) Case No.: 2015CV264449

)
)
_____ )
**Plaintiff,** )
)
vs. )
SYN-CAP INC, DOING BUSINESS AS )
SYNERGY CAPITAL CORPORATION, )
TRACEY R. LEWIS, DOING BUSINESS AS )
SYNERGY CAPITAL CORPORATION AND D )
JOHN DOE 1-7 **Defendants.** )
)
)

TO THE ABOVE NAMED DEFENDANT(S): SYN-CAP, INC.

You are hereby summoned and required to file with the Clerk of said Court and serve upon plaintiff's attorney, whose name and address is:

KURT R. HILBERT, ESQ.

# The Hilbert Law Firm, LLC
## 205 NORCROSS STREET
## ROSWELL, GA 30075

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service; unless proof of service of this complaint is not filed within five (5) business days of such service. Then time to answer shall not commence until such proof of service has been filed. IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.

This _____13_____ day of _____August_____, 20 _15_

Honorable Cathelene "Tina" Robinson
Clerk of Superior Court
By_____
Deputy Clerk

To defendant upon whom this petition is served:
This copy of complaint and summons was served upon you _____, 20 _____

_____
Deputy Sheriff

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum is used

COPY



## IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA
### 136 PRYOR STREET, ROOM C-103, ATLANTA, GEORGIA 30303
### SUMMONS

NORTHSIDE EXXON CORPORATION ) Case No.: 2015CV264449

_____

**Plaintiff,**

vs.

SYN-CAP INC., DOING BUSINESS AS
SYNERGY CAPITAL CORPORATION,
TRACEY R. LEWIS, DOING BUSINESS AS
SYNERGY CAPITAL CORPORATION AND
JOHN DOES 1-7   **Defendants.**

TO THE ABOVE NAMED DEFENDANT(S): TRACEY R. LEWIS

You are hereby summoned and required to file with the Clerk of said Court and serve upon plaintiff's attorney, whose name and address is:

KURT R. HILLBERT, ESQ.

## The Hilbert Law Firm, LLC
## 205 NORCROSS STREET
## ROSWELL, GA 30075

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service; unless proof of service of this complaint is not filed within five (5) business days of such service. Then time to answer shall not commence until such proof of service has been filed. IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.

This _____12_____ day of _August_, 20 15

Honorable Cathelene "Tina" Robinson
Clerk of Superior Court
By _____
Deputy Clerk

To defendant upon whom this petition is served:
This copy of complaint and summons was served upon you _____, 20 _____

_____
Deputy Sheriff

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum is used

COPY



# IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA
### 136 PRYOR STREET, ROOM C-103, ATLANTA, GEORGIA 30303
## SUMMONS

NORTHSIDE EXXON CORPORATION ) Case No.: 2015CV264449

_____

**Plaintiff,**

vs.

SYN-CAP INC, DOING BUSINESS AS
SYNERGY CAPITAL CORPORATION,
TRACEY R. LEWIS, DOING BUSINESS AS
SYNERGY CAPITAL CORPORATION AND
JOHN DOE 1-2,                  **Defendants.**

TO THE ABOVE NAMED DEFENDANT(S): JOHN DOE 1

You are hereby summoned and required to file with the Clerk of said Court and serve upon plaintiff's attorney, whose name and address is:

KURT R. HILBERT, ESQ.

## The Hilbert Law Firm, LLC
### 205 NORCROSS STREET
### ROSWELL, GA 30075

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service; unless proof of service of this complaint is not filed within five (5) business days of such service. Then time to answer shall not commence until such proof of service has been filed. IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.

This _____12_____ day of ___August___, 20 15

Honorable Cathelene "Tina" Robinson
Clerk of Superior Court
By _____
              Deputy Clerk

To defendant upon whom this petition is served:
This copy of complaint and summons was served upon you _____, 20 _____

_____
Deputy Sheriff

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum is used



COPY

## IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA

136 PRYOR STREET, ROOM C-103, ATLANTA, GEORGIA 30303

### SUMMONS

NORTHSIDE EXXON CORPORATION ) Case No.: 2015CV264449

_____ )
)
**Plaintiff,** )
)
vs. )
SYN-CAP INC., DOING BUSINESS AS )
SYNERGY CAPITAL CORPORATION, )
TRACEY R. LEWIS, DONG BUSINESS AS )
SYNERGY CAPITAL CORPORATION AND )
JOHN DOES 1-7 )
**Defendants.** )
)
)

TO THE ABOVE NAMED DEFENDANT(S): JOHN DOE 2,

You are hereby summoned and required to file with the Clerk of said Court and serve upon plaintiff's attorney, whose name and address is:

KURT R. HILBERT, ESQ.

**The Hilbert Law Firm, LLC**

**205 NORCROSS STREET**

**ROSWELL, GA 30075**

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service; unless proof of service of this complaint is not filed within five (5) business days of such service. Then time to answer shall not commence until such proof of service has been filed. IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.

This ____12____ day of __August__, 20_15_

Honorable Cathelene "Tina" Robinson
Clerk of Superior Court

By _____
Deputy Clerk

To defendant upon whom this petition is served:
This copy of complaint and summons was served upon you _____, 20_____

_____
Deputy Sheriff

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum is used

COPY



# IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA
### 136 PRYOR STREET, ROOM C-103, ATLANTA, GEORGIA 30303
## SUMMONS

NORTHSIDE EXXON CORPORATION )  Case No.: 2015CV264449
)
)
)
_____ )
Plaintiff, )
)
vs. )
SYN-CAP INC., DOING BUSINESS AS )
SYNERGY CAPITAL CORPORATION, )
TRACEY K. LEWIS, DOING BUSINESS AS )
SYNERGY CAPITAL CORPORATION AND )
JOHN DOE 1-3 )
Defendants. )
)
)

TO THE ABOVE NAMED DEFENDANT(S): John DOE 3

You are hereby summoned and required to file with the Clerk of said Court and serve upon plaintiff's attorney, whose name and address is:

KURT R. HILBERT, ESQ.

## The Hilbert Law Firm, LLC
## 205 NORCROSS STREET
## ROSWELL, GA 30075

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service; unless proof of service of this complaint is not filed within five (5) business days of such service. Then time to answer shall not commence until such proof of service has been filed. IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.

This _____12_____ day of August 20 15

Honorable Cathelene "Tina" Robinson
Clerk of Superior Court
By_____
Deputy Clerk

To defendant upon whom this petition is served:
This copy of complaint and summons was served upon you _____, 20_____

_____
Deputy Sheriff

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum is used

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

NORTHSIDE EXXON CORPORATION,    :
                                         :

    Plaintiff,                    :

vs.                                   :     CIVIL ACTION

                                         :     FILE NO. 2015 CU264449

SYN-CAP INC., doing business as Synergy    :
Capital Corporation, TRACEY R. LEWIS,    :
doing business as Synergy Capital        :
Corporation, and JOHN DOE #1-3,       :

    Defendants.                 :

—————————————————————:

FILED IN OFFICE

AUG 1 2 2015

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY GA

## COMPLAINT

COMES NOW, NORTHSIDE EXXON CORPORATION (hereinafter referred to as "Plaintiff" or "Northside"), by and through the undersigned counsel, and brings this Complaint against Defendants SYN-CAP INC., doing business as "Synergy Capital Corporation" (hereinafter referred to as "Defendant SCI") and TRACEY R. LEWIS, doing business as "Synergy Capital Corporation" ("Defendant Lewis") and unnamed Defendants JOHN DOE #1, #2 and #3, showing the Court as follows:

## PARTIES, JURISDICTION AND VENUE

1.

Plaintiff is an active Georgia corporation with both its registered agent and principal office located in Fulton County.

1

2.

Upon information and belief, Defendant Syn-Cap Inc. is an active Texas corporation doing business under the trade name "Synergy Capital Corporation" whose registered agent, Synergy Capital Corporation, may be served with service of process at 363 North Sam Houston Parkway E, Suite 1100-128, Houston, Harris County, Texas 77060.

3.

Upon information and belief, Defendant Tracey R. Lewis is a resident of Texas doing business under the trade name "Synergy Capital Corporation", who may be served with process at her residence located at 9210 Friendly Road, Houston, Harris County, Texas 77093.

4.

Defendants John Doe #1, #2 and #3 are identified as brokers, agents and others who played roles in inducing the transactions and agreements at issue in this lawsuit and who conspired with Defendants SCI and Lewis to defraud Plaintiff. This Verified Complaint will be amended to include their identities when they are discovered.

5.

Defendants are subject to the personal jurisdiction of this Court pursuant to O.C.G.A. § 9-10-91, *et. seq.* and as otherwise allowed by law, and venue is proper.

## FACTUAL BACKGROUND

6.

Plaintiff re-alleges and incorporates by reference paragraphs 1 through 5 of this Complaint.

7.

In late June of 2014, the Plaintiff entered into a "Financial Services & Deposit Agreement" with a company known as "Synergy Capital Corporation" located in Houston, Texas. A true and correct copy of the Financial Services & Deposit Agreement is attached hereto as Exhibit "A". Unknown to the Plaintiff at the time, neither the Texas nor Georgia Secretaries of State has any record for an entity named "Synergy Capital Corporation".

8.

Defendant Syn-Cap Inc. lists "Synergy Capital Corporation" as its registered agent in Texas, however, and Plaintiff believes that these two names are either being used interchangeably by the same business enterprise, or that "Synergy Capital Corporation" is a trade name being used by Defendant SCI and/or Defendant Lewis.

9.

During all times relevant to the facts of this Complaint, Defendant Tracey R. Lewis held herself out to be the "CEO" of "Synergy Capital Corporation".

10.

The Financial Services & Deposit Agreement, which was also signed by the

3

parties in late June 2014, represented Synergy's commitment as a private equity firm to provide a Standby Letter of Credit ("SBLC") to help fund the Plaintiff's purchase of gas stations in the Atlanta, Georgia area.

11.

The total of the SBLC to be extended by Synergy pursuant to the Financial Services & Deposit Agreement was $3,350,000.00. See Ex. "A".

12.

Pursuant to Sections 2(I) and 4 of the Financial Services & Deposit Agreement, the deposit of $375,000.00, or "8.934% of the face value of the SBLC" was allegedly required in order to consummate the parties' transaction. See Id. at ¶ 2(I) and 4. Paragraph 2(J) of that agreement stated that those funds were to be wired into a Comerica Bank account of Syn-Cap Inc.

13.

Section 3(D) of the Financial Services & Deposit Agreement also included provisions for the refund of that deposit in the event of certain circumstances. One of those circumstances was the failure to have the SBLC funded within 120 days. See Id. at ¶ 3(D).

14.

On or about June 25, 2014, Plaintiff's representative Yasir Khan sent Defendant Lewis two (2) payments totaling $375,000.00.

4

15.

Synergy failed to obtain the promised funding within 120 days.

16.

On or about December 7, 2014, Plaintiff expressly invoked the provisions of Section 3(D) of the Financial Services & Deposit Agreement and began to inquire as to what needed to be done to process the refund of the $375,000.00 deposit.

17.

On December 12, 2014, in an e-mail to Mr. Khan, Defendant Lewis acknowledged that such a request had been made and that Synergy was in the process of retrieving the money from its bank.

18.

On December 15, 2014, Mr. Khan informed Defendant Lewis that he had already sent a request for the refund to Synergy in writing via certified mail (as requested) on December 9, 2014.

19.

On December 17, 2014, Defendant Lewis sent another e-mail to Mr. Khan stating that "Due to the parameters of the receiving bank Scotia bank, the structure of the performance bond has to be terminated due to the borrower not meeting the minimum requirements for issuance."

20.

Nowhere in the Financial Services & Deposit Agreement was Northside's deposit

described as a "performance bond", nor was Synergy permitted by any contract or agreement to unilaterally alter the terms of the Financial Services & Deposit Agreement.

21.

The December 17, 2014 e-mail also laid out a new process allegedly required for "termination and refund," despite the prior legally binding Financial Services & Deposit Agreement. The e-mail promised an "expedient" resolution and stated in its last sentence that "This correspondence is an informal acknowledgement of our intent and will be followed by a formal summation by our legal department."

22.

Almost a week later, on December 22, 2014, Defendant Lewis sent an e-mail in which she told Mr. Khan that Synergy's legal team was in the process of "preparing the refund contract" for review by Scotia Bank and would have a copy of it sent to Mr. Khan on December 29, 2014.

23.

On December 30, 2014, Defendant Lewis sent Mr. Khan a draft of a "Termination Agreement" and told him that the refund process could take from 10 to 90 days to complete. She also informed him about various alleged fees and charges (one of which she stated could be up to $3,000.00) which were also not disclosed or agreed to in the original Agreement.

24.

Despite the inconsistencies described above, the Termination Agreement was

approved by all parties on or about January 5, 2015. A true and correct copy of the Termination Agreement is attached hereto as **Exhibit "B"**.

25.

The Termination Agreement states that the parties' original transaction for the SBLC under the Financial Services & Deposit Agreement was not successfully consummated and that earlier agreement would thereby be terminated, with Plaintiff's $375,000.00 deposit returned. See Ex. "B".

26.

Twenty-one days later, on January 26, 2015, Mr. Khan requested a status update on the refund from Defendant Lewis. She responded that there was nothing she could do to speed the process and said that contacting the bank "irritates the bank officers". She also revised the earlier timeline without explanation, saying this time that the refund would take "30-90 days from when the bank received the executed refund contract". She stated that the bank had received the refund contract on January 8, 2015.

27.

After the passing of several more weeks without communication from Synergy or Defendant Lewis, on April 1, 2015 Mr. Khan requested a conference call with Defendant Lewis.

28.

When that call also did not produce a resolution, Defendant Lewis gave Mr. Khan the name of Synergy's counsel on April 16, 2015. Synergy's counsel likewise did

not respond to Mr. Khan or his representatives for several weeks.

29.

Also on April 16, 2015, Defendant Lewis sent a letter to Northside warning that the refund process was going to take longer than normal and listing multiple excuses why the refund had not been processed quickly. It included in its bullet points such vague reasons as "Compliance Issues and Breach" and "Refund Request involves more than one foreign bank", but gave no timeframe for completion of the refund. A true and correct copy of the April 16, 2015 Letter from Synergy is attached hereto as **Exhibit "C"**.

30.

Upon receipt of this letter, Northside began to suspect that that Synergy and/or Ms. Lewis had not in fact held the deposit money in trust, but had likely converted the money to the company/her personal benefit.

31.

On June 11, 2015, counsel for Plaintiff sent a letter to counsel for Synergy demanding immediate refund of Northside's deposit. This letter also included a notice that Plaintiff intended to seek its attorney's fees pursuant to O.C.G.A. § 13-1-11 and/or 13-6-11. A true and correct copy of the Letter dated June 11, 2015 is attached hereto as **Exhibit "D"**.

32.

In response to Plaintiff's demand, counsel for Synergy, Gary Polland, sent a letter

8

to Plaintiff's counsel on June 18, 2015 stating that "my clients have already agreed to refund the deposit in question" and that they expected to receive the "international transfer" by the end of June.

33.

At no time since Northside first requested its refund pursuant to the terms of the Financial Services & Deposit Agreement on December 7, 2014 did Synergy or Defendant Lewis deny that Northside is entitled to such refund or state that Synergy's failure to perform is anything other than a resolvable delay. The June 18, 2015 letter from Synergy's counsel included a brief claim that Plaintiff had somehow breached the parties' agreements, but also stated that Synergy had decided to issue the refund regardless of that issue.

34.

Despite the repeated assurances outlines above and contained in the numerous communications between the parties since December 2014, Northside's deposit has still not been refunded as of the date of filing of this Verified Complaint.

COUNT I-II
BREACH OF CONTRACT
(As to Financial Services & Deposit Agreement and Termination Agreement)
(Defendants SCI and Lewis)

35.

Plaintiff re-alleges and incorporates paragraphs 1 through 34 of this Complaint as if stated in full herein-below.

36.

In late June of 2014, the Plaintiff entered into a "Financial Services & Deposit Agreement" with a company known as "Synergy Capital Corporation" (believed to be a trade name of the Defendants) located in Houston, Texas for the provision of a "Standby Letter of Credit" in the amount of $3,350,000.00. The SBLC was to be used by the Plaintiff to finance the purchase of various gas stations in the Atlanta, Georgia area.

37.

Pursuant to the terms of the Financial Services & Deposit Agreement, Plaintiff provided the Defendants with a deposit in the amount of $375,000.00 which could be refunded in full in the event that Defendants could not fund the SBLC within 120 days.

38.

When Defendants failed to fund the SBLC within 120 days, Plaintiff requested in December 2014 that its deposit be refunded.

39.

Defendants further agreed in the January 2015 Termination Agreement that the original SBLC transaction had not been completed and that Plaintiff would be refunded its deposit.

40.

As of the date of this Verified Complaint and despite numerous requests to do so, Defendants have failed and refuse to refund Plaintiff's deposit.

41.

Plaintiff has fully performed all of its obligations under the Financial Services & Deposit Agreement and the Termination Agreement

42.

Defendants' failure to perform as agreed constitutes a breach of the parties' two agreements.

43.

As a result of Defendants' breach, Plaintiff has been damaged in amounts equal to $375,000.00 and all additional damages allowed by law and to be determined in the enlightened conscience of an impartial jury.

## COUNT III
## SPECIFIC PERFORMANCE
## (Defendants SCI and Lewis)

44.

Plaintiff re-alleges and incorporates paragraphs 1 through 43 of this Complaint as if stated in full herein-below.

45.

Plaintiff is entitled under the parties' agreements to the immediate refund of its deposit, less transaction costs as described in the Termination Agreement and any other remedy as stated herein for which Defendant is liable.

## COUNT IV
## CONVERSION
### (Defendants SCI and Lewis)

46.

Plaintiff re-alleges and incorporates paragraphs 1 through 45 of this Complaint as if stated in full herein-below.

47.

Because of the parties' contractual agreements, Plaintiff has a right to immediate possession of its deposit funds.

48.

Defendants remain in actual possession of the deposit funds.

49.

Plaintiff has made repeated demands for the return of the deposit funds which are, upon information and belief, currently being held in a bank account belonging to Defendant SCI.

50.

Defendants have refused to return the deposit funds in a timely manner and have made multiple vague excuses as to why said funds cannot be returned.

51.

Plaintiff's funds being held by the Defendants have a value of $375,000.00. Plaintiff is entitled to return of that sum in addition to all damages allowed by law resulting from Defendants' tortious conduct to be determined in the enlightened

12

conscience of an impartial jury. In addition, Plaintiff is entitled to recover from Defendants punitive damages pursuant to O.C.G.A. § 51-12-5.1 et seq. for such tortious conduct including, without limitation, Defendants' conscious indifference to the consequences of their actions.

## COUNT V
## MONEY HAD AND RECEIVED
### (Defendants SCI and Lewis)

52.

Plaintiff re-alleges and incorporates paragraphs 1 through 51 of this Complaint as if stated in full herein-below.

53.

The Defendants have received $375,000.00 in deposit funds from the Plaintiff that in equity and good conscience they should not be allowed to keep.

54.

Plaintiff has made repeated demands for the return of the deposit funds.

55.

Despite Plaintiff's demands, Defendants have failed to return the deposit funds and have refused to explain that failure apart from stating a string of vague excuses.

56.

As a result of Defendants' conduct, Plaintiff has been damaged in amounts equal to $375,000.00 and all additional damages allowed by law and to be determined in the enlightened conscience of an impartial jury.

## COUNT VI
## BREACH OF FIDUCIARY DUTY
### (Defendants SCI and Lewis)

57.

Plaintiff re-alleges and incorporates paragraphs 1 through 56 of this Complaint as if stated in full herein-below.

58.

Defendants have a fiduciary duty to Plaintiff by virtue of their status of holders of a refundable deposit on behalf of Plaintiff.

59.

Defendants have breached that duty by failing and refusing to return said deposit upon a proper request made by the Plaintiff and thereafter converting the funds to their own use.

60.

Defendants' conduct has proximately caused damage to the Plaintiff.

61.

As a result of Defendants' breach, Plaintiff has been damaged in amounts equal to $375,000.00 and all additional damages allowed by law and to be determined in the enlightened conscience of an impartial jury.

62.

Plaintiff re-alleges and incorporates paragraphs 1 through 61 of this Complaint as if stated in full herein-below.

63.

The Defendants deceived Plaintiff into believing that they a) were a properly-registered and legal entity named "Synergy Capital Corporation", b) were able to fund the SBLC, c) intended to use Plaintiff's deposit to procure the SBLC, d) were able to fund the SBLC, e) were keeping the deposit in a trust account for the benefit of the Plaintiff and f) had any intention of returning the deposit pursuant to the terms of the parties' agreements.

64.

Defendants withheld information about the true facts related to each of the matters in the paragraph above.

65.

Plaintiff is entitled to all damages allowed by law resulting from Defendants' deceit to be determined in the enlightened conscience of an impartial jury.

66.

Plaintiff is entitled to recover from Defendant punitive damages pursuant to O.C.G.A. § 51-12-5.1 et seq. for such tortious conduct including, without limitation,

Defendants' conscious indifference to the consequences of their actions.

## COUNT VIII
## FRAUDULENT INDUCEMENT
### (Defendants SCI and Lewis)

67.

Plaintiff re-alleges and incorporates paragraphs 1 through 66 of this Complaint as if stated in full herein-below.

68.

Prior to and subsequent to the execution of both the Financial Services & Deposit Agreement and Termination Agreement, Defendants made false representations to Plaintiff regarding a) whether their business was a properly-registered and legal entity named "Synergy Capital Corporation", b) whether they were able to fund the SBLC, c) whether they intended to use Plaintiff's deposit to procure the SBLC, d) whether they were able to fund the SBLC, e) whether they were keeping the deposit in a trust account for the benefit of the Plaintiff and f) whether they had any intention of returning the deposit pursuant to the terms of the parties' agreements.

69.

In the wake of Defendants' failure to procure the SBLC in accordance with the Financial Services & Deposit Agreement, Defendants have failed to refund Plaintiff's deposit pursuant to the parties' agreements or give any rational reason why it cannot be refunded.

70.

The Defendants intentionally and knowingly made these representations with the intent to deceive Plaintiff, and with *scienter*.

71.

The Defendants' intent was to induce Plaintiff to wire $375,000.00 to the bank account of Defendant SCI, which upon information and belief is wholly-controlled by Defendant Lewis, so that such funds could be illegally converted to the use of Defendants.

72.

The Plaintiff's reliance on these representations was reasonable and justifiable, and to its detriment.

73.

The Plaintiff has incurred damages which were proximately and directly caused by reliance on these representations.

74.

Plaintiff is entitled to recover from Defendants all damages allowed by law for Defendants' fraud to be determined in the enlightened conscience of an impartial jury.

75.

Plaintiff is entitled to recover from Defendant punitive damages pursuant to O.C.G.A. § 51-12-5.1 et seq. for such tortious conduct including, without limitation, Defendant's conscious indifference to the consequences of their actions.

## COUNT IX
## PROMISSORY ESTOPPEL
### (Defendants SCI and Lewis)

76.

Plaintiff re-alleges and incorporates paragraphs 1 through 74 of this Complaint as if stated in full herein-below.

77.

The Defendants made an agreement with the Plaintiff to provide the SBLC for Plaintiff's purchase of various gas stations in the Atlanta, Georgia area.

78.

The Plaintiff relied on the Defendants' representations regarding their procurement of the SBLC and, in the event that they were unsuccessful, the refund of its deposit.

79.

In reliance on Defendants' promises and in accordance with the parties' mutual agreement, Plaintiff sent wire transfers to the bank account of Defendant SCI in the amount of $375,000.00.

80.

Because Plaintiff's deposit has not been refunded despite numerous timely and proper requests for the Defendants to do so, justice requires that the parties' agreement be enforced.

81.

Plaintiff is entitled to all damages recoverable, including but not limited to pain and suffering, and such other damages to be determined by the enlightened conscience of an impartial jury.

### COUNT X
### CONVERSION
### (Defendants John Doe #1, #2 and #3)
82.

Plaintiff re-alleges and incorporates paragraphs 1 through 81 of this Complaint as if stated in full herein-below.

83.

Because Defendants John Doe #1, #2 and #3 received commissions, broker's fees and other sums of money from Plaintiff in connection with transactions that was clearly fraudulent and because Defendants may have participated in a conspiracy to defraud Plaintiff, Plaintiff has a right to immediate possession of such funds.

84.

Defendants remain in actual possession of said funds.

85.

Plaintiff has made demands for the return of the sums paid to Defendants.

86.

Defendants have refused to return the funds in a timely manner.

87.

Plaintiff's funds being held by the Defendants have a value in excess of $13,000.00. Plaintiff is entitled to return of that sum and all other funds to be proven at trial in addition to all damages allowed by law resulting from Defendants' tortious conduct to be determined in the enlightened conscience of an impartial jury. In addition, Plaintiff is entitled to recover from Defendants punitive damages pursuant to O.C.G.A. § 51-12-5.1 et seq. for such tortious conduct including, without limitation, Defendants' conscious indifference to the consequences of their actions.

## COUNT XI
## MONEY HAD AND RECEIVED
### (Defendants John Doe #1, #2 and #3)
88.

Plaintiff re-alleges and incorporates paragraphs 1 through 87 of this Complaint as if stated in full herein-below.

89.

The Defendants have received funds in excess of $13,000.00 in commissions, broker's fees and other sums of money from the Plaintiff that in equity and good conscience they should not be allowed to keep.

90.

Plaintiff has made demand for the return of these funds.

91.

Despite Plaintiff's demand, Defendants have failed to return the funds.

92.

As a result of Defendants' conduct, Plaintiff has been damaged in amounts equal to $13,000.00 and all additional damages allowed by law and to be determined in the enlightened conscience of an impartial jury.

<u>COUNT XII</u>
<u>BREACH OF FIDUCIARY DUTY</u>
<u>(Defendants John Doe #1, #2 and #3)</u>
93.

Plaintiff re-alleges and incorporates paragraphs 1 through 92 of this Complaint as if stated in full herein-below.

94.

Defendants have a fiduciary duty to Plaintiff by virtue of their status as brokers and agents who were advising Plaintiff and who were aware or should have been aware of the fraudulent nature of the agreement Plaintiff reached with Defendants SCI and Lewis.

95.

Defendants have breached that duty by either failing to investigate the true identity and financial viability of Defendants SCI and Lewis, or by actively participating in a conspiracy to defraud Plaintiff.

96.

Defendants' conduct has proximately caused damage to the Plaintiff.

97.

As a result of Defendants' breach, Plaintiff has been damaged in amounts equal to $388,000.00 and all additional damages allowed by law and to be determined in the enlightened conscience of an impartial jury.

### COUNT XIII
### DECEIT
### (Defendants John Doe #1, #2 and #3)

98.

Plaintiff re-alleges and incorporates paragraphs 1 through 97 of this Complaint as if stated in full herein-below.

99.

The Defendants deceived Plaintiff by leading Plaintiff to believe that Defendants SCI and Lewis a) were a properly-registered and legal entity named "Synergy Capital Corporation", b) had been properly investigated by Defendants, c) intended to use Plaintiff's deposit to procure the SBLC, d) were able to fund the SBLC, e) were keeping the deposit in a trust account for the benefit of the Plaintiff and f) had any intention of returning the deposit pursuant to the terms of the parties' agreements. Defendants also deceived Plaintiff by representing that they had exercised due diligence in vetting Defendants SCI and Lewis.

100.

Defendants withheld information about the true facts related to each of the matters in the paragraph above.

101.

Plaintiff is entitled to all damages allowed by law resulting from Defendants' deceit to be determined in the enlightened conscience of an impartial jury.

102.

Plaintiff is entitled to recover from Defendants punitive damages pursuant to O.C.G.A. § 51-12-5.1 et seq. for such tortious conduct including, without limitation, Defendants' conscious indifference to the consequences of their actions.

### COUNT XIV
### FRAUDULENT INDUCEMENT
### (Defendants John Doe #1, #2 and #3)

103.

Plaintiff re-alleges and incorporates paragraphs 1 through 102 of this Complaint as if stated in full herein-below.

104.

Prior to and subsequent to the execution of both the Financial Services & Deposit Agreement and Termination Agreement, Defendants made false representations to Plaintiff regarding their knowledge of a) whether the business of Defendants SCI and Lewis was a properly-registered and legal entity named "Synergy Capital Corporation", b) whether SCI and Lewis were able to fund the SBLC, c) whether SCI and Lewis intended to use Plaintiff's deposit to procure the SBLC, d) whether SCI and Lewis were keeping the deposit in a trust account for the benefit of the Plaintiff and f) whether SCI and Lewis had any intention of returning the deposit pursuant to the terms

of the parties' agreements.

105.

The Defendants intentionally and knowingly made these representations with the intent to deceive Plaintiff, and with *scienter*.

106.

The Defendants' intent was to induce Plaintiff to wire $375,000.00 to the bank account of Defendant SCI, which upon information and belief is wholly-controlled by Defendant Lewis, so that such funds could be illegally converted to the use of one or more of the Defendants. Defendants also intended to induce Plaintiff to pay various commissions, broker's fees and other sums of money in connection with the deposit transaction.

107.

The Plaintiff's reliance on these representations was reasonable and justifiable, and to its detriment.

108.

The Plaintiff has incurred damages which were proximately and directly caused by reliance on these representations.

109.

Plaintiff is entitled to recover from Defendants all damages allowed by law for Defendants' fraud to be determined in the enlightened conscience of an impartial jury.

110.

Plaintiff is entitled to recover from Defendants punitive damages pursuant to O.C.G.A. § 51-12-5.1 et seq. for such tortious conduct including, without limitation, Defendants' conscious indifference to the consequences of their actions.

<u>COUNT XV</u>
<u>CONSPIRACY TO COMMIT FRAUD</u>
<u>(All Defendants)</u>

111.

Plaintiff re-alleges and incorporates paragraphs 1 through 110 of this Complaint as if stated in full herein-below.

112.

All of the named Defendants conspired by common design to engage in tortious conduct.

113.

The Defendants' common purpose was to defraud the Plaintiff of hundreds of thousands of dollars in deposits, commissions, fees and other sums of money in connection with a transaction with a fictional "private equity firm" named "Synergy Capital Corporation".

114.

The actions of each of the Defendants have furthered their commission of the fraud against the Plaintiff.

115.

As a result of the actions of the Defendants, Plaintiff has been damaged.

116.

Plaintiff is entitled to recover from Defendants all damages allowed by law for Defendants' conspiracy to commit fraud to be determined in the enlightened conscience of an impartial jury.

117.

Plaintiff is entitled to recover from Defendants punitive damages pursuant to O.C.G.A. § 51-12-5.1 et seq. for such tortious conduct including, without limitation, Defendants' conscious indifference to the consequences of their actions

## COUNT XVI
## ATTORNEYS FEES COSTS AND EXPENSES
### (All Defendants)

118.

Plaintiff re-alleges and incorporates paragraphs 1 through 117 of this Complaint as if stated in full herein-below.

119.

Plaintiff gave pre-litigation notice that if this action was to be filed that Plaintiff would seek all of its attorneys' fees, costs and expenses of this action as allowed by law pursuant to O.C.G.A. §§ 13-1-11 and/or 13-6-11.

120.

Defendants ignored Plaintiff's pre-litigation demand constituting bad faith,

stubborn litigiousness and causing plaintiff unnecessary trouble and expense in having to file this lawsuit.

121.

Plaintiff is entitled and seeks all of his attorneys fees, costs and expenses of this action pursuant to O.C.G.A. §§ 13-1-11 and/or 13-6-11.

122.

In the alternative, Defendants have engaged in tortious conduct, acted in bad faith in connection with pre-arbitration attempts to resolve this matter, have been stubbornly litigious, and have caused the Petitioners unnecessary trouble and expense in having to bring this proceeding to obtain complete and proper relief, supporting an award of attorneys' fees and other costs of the litigation pursuant to O.C.G.A. §§ 13-6-11 and/or 9-15-14, or as otherwise allowed by law.

## COUNT XVII
## PUNITIVE DAMAGES

### (All Defendants)

123.

The averments set forth above in Paragraphs 1 – 122 are incorporated by reference as though fully set forth herein.

124.

Defendants' acts and omissions were intentional, knowing, malicious, willful, wanton and/or with a conscious indifference to the consequences such that punitive damages should be awarded to Plaintiff in an amount to be determined by the

27

enlightened conscience of an impartial jury.

125.

Defendants' actions were made with a specific intent to harm Plaintiff such that punitive damages should be uncapped as contemplated by O.C.G.A. § 51-12-5.1 *et seq.*

**WHEREFORE**, all premises considered, Plaintiff prays for a jury trial of twelve and the following relief:

(1)   That judgment be rendered in favor of Plaintiff and against the Defendants on all counts as set forth hereinabove;

(2)   That Plaintiff be awarded damages in such amounts as are proved at trial and determined in the enlightened conscience of an impartial jury, including without limitation punitive damages;

(3)   That Plaintiff be awarded its cost of the litigation including reasonable and necessary attorney's fees in such amounts as are proved at trial and under the counts set forth herein; and

(4)   For such other and further relief as this Court may deem just, proper and equitable.

Respectfully submitted this 12th day of August, 2015.

THE HILBERT LAW FIRM, LLC

KURT R. HILBERT
Georgia Bar No. 352877
MATTHEW J. LEE, *Of Counsel*
Georgia Bar No. 140814
*Attorneys for Plaintiffs*

205 Norcross Street
Roswell, Georgia 30075
Telephone No. (770) 551-9310
Facsimile No.: (770) 551-9311

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

NORTHSIDE EXXON CORPORATION,

    Plaintiff,

vs.

SYN-CAP INC., doing business as Synergy
Capital Corporation, TRACEY R. LEWIS,
doing business as Synergy Capital
Corporation, and JOHN DOE #1-3,

    Defendants.

CIVIL ACTION

FILE NO.

## VERIFICATION

I, _YASIR KHAN_, being first duly sworn, depose and state that I am _Secretary_ of the Plaintiff in the above captioned action, and have personal knowledge of or belief in the facts contained in the foregoing Complaint. The facts contained in the said Complaint were furnished to the attorney preparing said pleading by the Plaintiff and are true and correct to the best of my knowledge and belief.

In witness whereof, the Affiant has affixed his hand and seal on this _11_ day of _August_, 2015.

Affiant, _YASIR KHAN_, Secretary
(TITLE), Northside Exxon Corporation

Sworn to and subscribed to
Before me this _11_ day of _August_, 2015.

_____
Notary Public
My Commission Expires:
_Feb. 5, 2019_

# FINANCIAL SERVICES & DEPOSIT AGREEMENT

FINANCIAL SERVICES & DEPOSIT AGREEMENT

PURPOSE: 10M SBLC



June 23, 2014,

This Financial Services and Deposit Agreement (hereinafter referred to as "the Agreement") is entered into this August 1, 2013, with Synergy Capital Corporation d/b/a Encompass 2 Corp hereinafter referred to as ("INVESTOR") with offices at 363 N. Sam Houston Parkway, Ste.#1100-128, Houston TX ~ 77060 and EXXON & VALERO GAS STATIONS. (hereinafter referred to as "CLIENT"), with offices at 3170 Donald Lee Hollowwell Pkwy Atlanta GA 30318

479 Joseph Boone Blvd Atlanta GA 30314

WHEREAS, CLIENT has an agreement with the Private Equity Firm to performing the Issuance, monetization and funding of a $3,350,000.00 - (Three Million and Three Hundred and Fifty Thousand Dollars – USD) - Standby Letter of Credit (hereinafter referred to as "SBLC").

WHEREAS, INVESTOR is prepared to complete the arrangement/ issuance facilitation and funding of the Standby Letter of Credit (SBLC) in the amount of up to $3,350,000.00 - (Three Million and Three Hundred and Fifty Thousand Dollars – USD)  or of several smaller amounts equaling said amount on behalf of the CLIENT completing the instruments issuance, monetization, and funding (credit enhancement).

NOW, THEREFORE in consideration of the mutual promises and conditions herein stated, the parties agree as follows:

(A) INVESTOR "Beneficiary" hereby covenants and agrees to perform the Issuance of a STANDBY LETTER OF CREDIT in the amount of up $3,350,000.00 - (Three Million and Three Hundred and Fifty Thousand Dollars – USD) (SBLC) on behalf of the CLIENT as "Further Credit To" for the monetization and face amount of in the amount of up $3,350,000.00 - (Three Million and Three Hundred and Fifty Thousand Dollars – USD) or of several smaller amounts equaling said amount. Thereafter, the amount due to the CLIENT is the $3,350,000.00 - (Three Million and Three Hundred and Fifty Thousand Dollars – USD) – USD payable to the prescribed schedule and coordinates of CLIENT.

(B) The SBLC shall be returned free and clear by INVESTOR inclusive of the repayment of Loan.

EXHIBIT

A

(C) The SBLC shall be issued within Ten (10) to Fifteen (15) business days, following the receipt of cleared funds into the account of INVESTOR following execution of the Agreement by the parties.

(D) The SBLC shall be issued for a validity period of three hundred sixty five (365) consecutive calendar days with a specific provision that it be returned free and clear prior to its maturity date.

(E) The SBLC shall be issued through normal bank delivery channels in "good delivery" form as the term is understood in the international banking community.

## 2. REPRESENTATION, OBLIGATIONS AND UNDERTAKINGS BY CLIENT:

(A) In order to initiate the transaction the Client has to perform the wiring of such amount:

(B) CLIENT agrees, acknowledges and warrants that this is a private transaction between both parties herein, in that neither side have forced, coerced or solicited the other into entering into this agreement;

(C) CLIENT hereby acknowledges and warrants that it has been provided adequate time and opportunity to review the terms and wording herein and that;

(D) CLIENT further acknowledges and warrants that any funds used by CLIENT for this transaction are clean, clear, and of non-criminal origin;

(E) CLIENT further acknowledges and warrants that CLIENT has the right to make and/or exercise certain demands for performance of obligations by INVESTOR unless specifically contained in the Agreement and/or time frames listed.

(F) CLIENT acknowledges that the sole obligation of INVESTOR, under the terms of the Agreement, lies in the issuance and delivery of the SBLC and monetization and funding thereof.

(G) CLIENT represents and warrants to INVESTOR that all information provided by CLIENT is true and accurate and that INVESTOR may rely upon any and all information provided to it by CLIENT, in the performance of its obligations under the Agreement, without further confirmation of the truth or accuracy of such information.

(H) CLIENT represents and warrants that it is an accredited Investor and has extensive experience with the type of transaction envisioned by this Agreement.

(I) CLIENT further represents and warrants that it has agreed to retention of the services of the appointed INVESTOR additionally, for the deposit, safekeeping and disbursement of the sum of $375,000.00 (USD) -- THREE HUNDRED AND THIRTY FIVE THOUSAND DOLLARS equivalent to 0.934% of face value of the SBLC for swift processing and SBLC fees (hereinafter referred to as "the Upfront Costs") to be with INVESTOR, from time to time, designate.

(J) Within two (2) business days (48 hrs) following the execution of this Agreement by CLIENT and INVESTOR, CLIENT shall cause the wire-transfer of the Upfront Costs Funds to the INVESTOR'S account as described herein.

Account Name: SYN-CAP Inc.

Account Address: 11111 Katy Fwy Suite 910

Houston Texas 77079

Bank: Comerica Bank

Bank Address: 370 Greens Road

Houston Texas 7060

Bank Officer: Brenda Perdomo

Bank Phone Number: 281-423-3150

Routing Number: ▓▓▓▓▓

Account Number: ▓▓▓▓▓

Page 5

(K) CLIENT understands and agrees that INVESTOR shall be liable for any losses or damages, whether rising in contract, tort or otherwise sustained by CLIENT or any other person in connection with the subject matter under this Agreement. Such loss or damages may include, but is not limited to, losses or damages, except if caused by the gross negligence of INVESTOR, or other similar act or default by INVESTOR, or others, whether consequential or otherwise and whether or not such losses were reasonably foreseeable. This Agreement includes by reference all the warranties and, to the extent that INVESTOR may not exclude any warranties or conditions, it excludes from application all such implied warranties or conditions.

3. REPRESENTATIONS, DUTIES AND UNDERTAKINGS BY THE INVESTOR AS DEPOSIT RECEIVING AGENT:

(A) The INVESTOR agrees to act as deposit receiving agent in relation to the funds to be deposited with it pursuant to this Agreement.

(B) The INVESTOR hereby warrants that the Funds to be delivered to into its care shall be distributed in strict conformity with the instructions contained in the Agreement and/or according to formal processes and/or procedures and/or protocols warranted to perform a successful transaction. INVESTOR shall not entertain instructions to distribute or hold the deposited Funds in any manner other than what is set forth herein unless both the CLIENT and INVESTOR agree to such changes in writing aside of formal processes and/or procedures and/or protocols warranted to perform a successful transaction.

(C) The INVESTOR shall notify CLIENT, by facsimile or by telephone, of the receipt and availability of the deposited Funds within eight (24 to 48) international banking hours of notification by Bank that such funds have been credited.

(D) The INVESTOR will release or return the deposited Funds upon the occurrence of either one of the following two events: *US $375,000.00 THREE HUNDRED SEVENTY-FIVE*

I. RELEASE TO CLIENT: After receipt and posting of the deposited Funds in the INVESTOR account, INVESTOR shall not release the $500,000.00 (USD) -- FIVE HUNDRED THOUSAND DOLLAR until the RWA or confirmation has been acknowledged from the issuing bank that the instrument is being cut for this particular transaction. Then and only then shall the bank charges and initiation of SWIFT Procedures be released.

1. AK
2. RF
Date 6-24-14

Page 6

H. RELEASE TO CLIENT: In the event that the SBLC above is not funded within One Hundred and Twenty (120) business days after the crediting of the deposited Funds in the INVESTOR'S account, upon written demand of CLIENT, INVESTOR will forthwith return all funds released pursuant to ¶3.D.(I), above, to the CLIENT and the INVESTOR shall immediately wire-transfer back to CLIENT the full amount of the deposited Funds, less applicable bank transfer fees and costs typical and/or standard to the transference of funds from one bank to another.

4. CONSIDERATION AND PAYMENT OF FEES:

**$ 375,000.00  THREE HUNDRED SEVENTY-FIVE**

The Fee for the issuance of the SBLC for the period of Three Hundred Sixty Five (365) consecutive calendar days shall be the sum of ~~$4,500,000.00~~ (USD) – ~~FIVE HUNDRED~~ THOUSAND DOLLARS, which ~~$200,000.00~~ shall be wire-transferred by CLIENT within two (2) business days following the execution of the Agreement, ~~and the remaining $200,000.00 will be transferred within 30 days after.~~ Such Fee shall be transferred by Fed wire or SWIFT to the bank coordinates of the INVESTOR as follows:

TBD

5. UNDERSTANDING AMONG THE PARTIES:

INDEMNITY:

The CLIENT hereby concurs to fully INVESTOR un-indemnify the INVESTOR at all times against any losses or damages (whether direct, indirect or consequential) or costs, fines, taxes, levies or penalties suffered by the INVESTOR as a result of any misrepresentation by the INVESTOR arising from or related to any breach by the INVESTOR under the terms of the Agreement.

6. EXPENSES:

The INVESTOR shall be allowed to deduct applicable bank transfer fees and costs typical and/or standard to the transference of funds from one bank to another at any time following the receipt of the Funds

Into his account or at such other major International bank where the Funds might have been transferred while remaining under the INVESTOR's control. All reasonable expenses incurred or to be incurred in connection with the stated purposes of the Agreement.

## 7. CONFIDENTIALITY & COMMUNICATIONS:

(A) The terms and conditions of this Agreement and all documents concerning the underlying transaction shall be treated by the parties to this Agreement with the utmost confidentiality. Neither CLIENT or INVESTOR nor anyone acting on their behalf, shall disclose this Agreement or any documents concerning the underlying transaction to any other party without the express written consent of the other parties.

## 8. DEFAULTS AND BREACH BY CLIENT:

CLIENT will be considered in material breach of this Agreement under any of the following conditions:

(A) Failure, refusal or neglect by CLIENT to perform any obligation or duty or supply any document under this Agreement except if such failure, refusal or neglect is approved, consented or excused by INVESTOR;

(B) Breach by CLIENT, or by anyone at its direction or under its control, of any warranties or representations;

(C) Performance by CLIENT, or anyone under its direction and/or control of any act which may obstruct, prevents, impede or hinder the performance of any contractual duty or obligation by CLIENT as set forth in this Agreement;

(D) Failure, refusal or neglect by CLIENT to pay the required Service Fee in the manner prescribed herein;

(E) CLIENT or anyone employed by or acting on its behalf contacting or communicating with the Issuing Bank in any manner without the consent of INVESTOR;

(F) Activities of any type by CLIENT which may tend to diminish the value of the transaction to INVESTOR.

## 9. DEFAULT AND BREACH BY INVESTOR:

INVESTOR shall be deemed to be in material breach of this Agreement for failure to provide the SBLC as set forth herein above or if standing in breach of any of its warranties and/or representations.

(A) Performance by INVESTOR, or anyone under its direction and/or control of any act which may obstruct, prevents, impede or hinder the performance of any contractual duty or obligation by INVESTOR as set forth in this Agreement

## 10. WAIVER OF COMPLIANCE

Any failure of either party to comply with any obligation, representation, warranty, covenant, agreement or condition set forth in the Agreement may be waived by the other party only by a written instrument signed by both parties on behalf of the requesting party that will receive waiver. Any such waiver or failure to insist upon strict compliance with a term of the Agreement shall not operate as a waiver of, or estoppels with respect to, any subsequent or other failure to comply.

## 11. LAW APPLICABLE

The Agreement shall be governed by the Laws of the State of Texas and, to the extent applicable, of the United States of America.

## 12. DISPUTE RESOLUTION:

(A) Any disagreement arising out of the Agreement or from an alleged breach thereof shall be settled by arbitration in accordance with the Rules of the American Arbitration Association and judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction.

(B) The parties may agree upon one Arbitrator, otherwise there shall be three (3), one named in writing by CLIENT and INVESTOR within five (5) business days after notice arbitration is served by any one of the parties to any other party; and a third Arbitrator selected by the two named Arbitrators within five (5) business days thereafter.

(C) No one may serve as an Arbitrator who has been, is or in any way may be financially interested in the Agreement or in the affairs of either CLIENT or INVESTOR.

## 13. TIME OF THE ESSENCE:

Time shall be of the essence in respect to any date or period mentioned in the Agreement.

## 14. CONFIDENTIALITY:

Except as may be required by law, none of the parties hereto shall, at any time make any announcement regarding this transaction or disclose any terms thereof which are not in the public domain without the prior written consent of the other parties and all parties shall use their best endeavors to keep the terms of this transaction which are not already in the public domain from time to time strictly confidential. Nothing contained herein shall prevent the disclosure of the Agreement or the terms of this transaction to the parties' respective legal advisors.

## 15. NON-DISCLOSURE AND NON-CIRCUMVENTION:

The Parties hereto understand and agree that the information which will be imparted to any of the parties following the execution of the Agreement will lead to the identification of information such as lending institutions, funding sources, sources of bank instruments, prospective purchasers and bidders, individuals and/or trusts. Such information is of a proprietary and confidential nature and shall so remain for a period of sixty (60) months following the execution of the Agreement. Each party to the Agreement further certifies

that it or any partnership or group, association or legal entity with which it or he may be affiliated in any way, will not disclose any such proprietary information imparted or acquired as a result of its or his execution of the Agreement or participation in a transaction under the Agreement. Similarly, each party agrees not to communicate in any manner, whether by telephone, mail, facsimile, email or personal contact with the contacts, confidential agents, employees, etc, of the other parties.

## 16. ENTIRE AGREEMENT:

The Agreement constitutes the entire agreement among the parties with respect to the matters dealt with herein and supersedes any previous agreement among the parties in relation to such matters. Each party acknowledges that in entering into this Agreement it/he has not relied upon any representation, warranty or undertaking save as expressly set out herein or in any document referred to herein.

## 17. MODIFICATION:

The Agreement may not be modified, altered or amended in any material respect except with the written consent of the parties hereto.

## 18. SEVERABILITY, FACSIMILE AND COUNTERPARTS:

(A) Each of the terms and provisions of the Agreement is to be deemed severable in whole or in part and if any term or provision or the application thereof in any circumstances shall be invalid, illegal or unenforceable, the remaining terms and provisions or the application thereof to circumstances other than those to which it is held invalid, illegal or unenforceable shall not be affected and shall remain in full force and effect.

(B) A fully executed facsimile copy of the Agreement shall be accepted as an original and may be executed in counterparts, each of which shall be deemed an original regardless of the date of its execution and delivery to the other parties to the Agreement. All such counterparts together shall constitute one and the

IN WITNESS WHEREOF the Agreement has been executed on the date first above written and becomes effective upon delivery of a signed original.

Page 11

Synergy Capital Corporation

Principle: _Tracey R. Lewis_

Date: _6-29-14_

By: _[signature]_

RUBINA FATTEH & ASNIF KAHN

Principal: Rubina Fatteh, Pres. & CEO

Principle: _Asif Kahn, Secretary-Treasurer_

Date: 6.24.14

By: _[signature]_
RUBINA FATTEH

By: _[signature]_
ASIF KAHN

# TERMINATION AGREEMENT

THIS TERMINATION AGREEMENT, dated as of December 29, 2014 (this "Agreement"), is entered into betwixt Synergy Capital Corporation ("SYN-CAP"), and Northside Exxon Corporation. ("Northside Exxon Corporation").

WITNESSETH:

WHEREAS, the parties hereto are parties to the Financial Services and Deposit Agreement (the "Financial Services and Deposit Agreement") dated as of August 1, 2014 pursuant to the agreement to lend/fund against a performance bond drawn against Synergy Capital Corporation Funds (the "Pool");

WHEREAS, during negotiations subsequent of the performance bond, Synergy Capital Corporation will not be able to issue the performance bond with respect to the eligibility criteria for losses against our assets;

WHEREAS, although the parties never entered into closing documentation for the transaction, Synergy Capital Corporation received $375,000.000 (Three Hundred and Seventy-Five Thousand Dollars) from the Financial Services and Deposit Agreement for the benefit of establishing a performance bond.

WHEREAS, on December 17, 2014, Northside Exxon Corporation notified Synergy Capital Corporation of its desire to terminate negotiations with respect to the performance bond contemplated by the Financial Services and Deposit Agreement;

WHEREAS, the Financial Services and Deposit Agreement provided that Northside Exxon Corporation may terminate the structuring of the performance bond contemplated by the Financial Services and Deposit Agreement at any time, with the consent of both Parties, and that the parties would negotiate in good faith the appropriate refund in connection with the permitted termination; and

WHEREAS, the parties hereto agree that it is appropriate for Northside Exxon Corporation to be in receipt of its initial contribution forwarded to Synergy Capital Corporation for their contribution towards their performance bond.

WHEREAS, the parties hereto agree that the appropriate compensation to Northside Exxon Corporation should consist of: (i) the $375,000.00 (Three Hundred and Seventy-Five Thousand Dollars) less the respective transaction and banking wire fees appropriate and warranted regarding its initial receipt and final delivery of funds to Northside Exxon Corporation. The receiving account for Northside Exxon Corporation was not initially stated in the Financial Services and Deposit Agreement concerning the negotiations and construction of the respective performance bond on August 1, 2014 (



EXHIBIT
B

Scanned by CamScanner

ref: bank wire to an account owned by Northside Exxon Corporation) Termination of Financial Services and Deposit Agreement . The parties hereto hereby agree to terminate the Financial Services and Deposit Agreement effective upon the receipt of the payments specified in Section 1.2. Release, (a) The parties acknowledge and agree that, upon the payment in full of all amounts specified in Section 1, (i) Northside Exxon Corporation releases, discharges and acquits Synergy Capital Corporation from all Released Claims (as defined below), except for the rights and obligations under this Agreement and (ii) the Synergy Capital Corporation release, discharge and acquit Northside Exxon Corporation from all Released Claims, except for the rights and obligations under this Agreement.

(b)     Released Claims. "Released Claims" means all claims between the Synergy Capital Corporation, on the one hand, and Northside Exxon Corporation, on the other hand, including but not limited to claims, demands, obligations, liabilities, cause or causes of action (whether at law or in equity), whensoever arising and occurring at any time up to and through the date hereof, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, matured or unmatured, fixed or contingent, that arise out of or relate to the Financial Services and Deposit Agreement and the guarantee contemplated thereby.

1.     Entire Agreement; Amendment. This Agreement constitutes the entire agreement

between the parties hereto with respect to the subject matter hereof, and supersedes any prior oral or written agreements, commitments or understanding with respect to the matters provided for herein. No amendment, modification or discharge of this Agreement shall be valid or binding unless set forth in writing and duly executed by the party against whom enforcement of the amendment, modification, or discharge was sought.

2.     Execution of Counterparts. To facilitate execution, this Agreement may be

executed in as many counterparts as may be required; and it shall not be necessary that the signatures of, or on behalf of, each party, or that the signatures of all persons required to bind any party, appear on each counterpart but it shall be sufficient that all such signatures appear on one or more of the counterparts. All counterparts shall collectively constitute a single agreement. It shall not be necessary in making proof of this Agreement to produce or account for more than a number of counterparts containing the respective signatures of, or on behalf of, all of the parties hereto.

3.     Governing Law. THIS AGREEMENT, AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER, SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, FEDERAL LAW AND NOT THE LAW OF ANY STATE OR LOCALITY. TO THE EXTENT THAT A COURT LOOKS TO THE LAWS OF ANY STATE TO DETERMINE OR DEFINE THE FEDERAL LAW, IT IS THE INTENTION OF THE PARTIES HERETO THAT SUCH COURT SHALL LOOK ONLY TO THE LAWS OF THE STATE OF TEXAS .

Scanned by CamScanner

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their respective duly authorized officers as of the day and year first above written.


SYNERGY CAPITAL CORPORATION

_____
Tracey R. Lewis


NORTHSIDE EXXON CORPORATION

_____
Rubina Kahn

Scanned by CamScanner

# SYNERGY

## SYNERGY CAPITAL CORPORATION

EXHIBIT



SYNERGY CAPITAL CORPORATION

## Letter to Our Client

Synergy Capital Corporation
363 N. Sam Houston Pkwy E
Suite 1100
Houston Texas 77060

Northside Exxon Corporation
479 Joseph E Boone Blvd
Atlanta GA 30314

April 16, 2015

Dear Yasir Kahn:

Thank you for inquiry to Synergy Capital Corporation as to the status of your performance bond refund request in accordance with the Termination Agreement dated December 29, 2014 and pursuant to Financial Services & Deposit Agreement dated June 22, 2014.

The refund request is taking longer than normally anticipated to process due to the authentication and compliance portion of the refund process. Under the Termination Agreement there is not a specified timeframe for completion due to the complications and unforeseen delays that may arise during the reversal/refund process. As a courtesy we are advising you that the refund process will be extended past the normal time expectancy. We have listed below several reasons as to why your refund has been delayed

_____ Refund Request involves more than one foreign bank
_____ Refund Request was initiated by client toward the completion of the bond process
_____ Termination Contract did not include all of the parties listed on the bond agreement
_____ Inaccurate information listed on the Termination Contract
_____ Compliance issues and Breach
_____ Termination Agreement parties did not match those on the Financial Services & Deposit Agreement
_____ Refund is processed based on Banking Days Only excluding holidays and weekends.

Based on the current status of your refund request we will be forwarding your request over to our legal department and counsel. We apologize for any inconvenience caused.

Respectfully,

Tracey R. Lewis
Signatory

# THE HILBERT LAW FIRM

A LIMITED LIABILITY COMPANY

THE TERRACES NORTH
400 PERIMETER CENTER TERR NE SUITE 900
ATLANTA, GEORGIA 30346

MAILING ADDRESS:
205 NORCROSS STREET
ROSWELL, GA 30075

KURT HILBERT
MANAGING MEMBER

OF COUNSEL
LISA YORK BOWMAN
MELANIE ELLWANGER
MATTHEW J. LEE
SUSAN GREEN MILLER
ROBERT D. WILLIAMS

TO CONTACT WRITER:
EMAIL: KHILBERT@HILBERTLAW.COM
DIRECT DIAL: 770-551-9310 EXT 101
FACSIMILE: 770-551-9311
WEBSITE: www.hilbertlaw.com

June 11, 2015

<u>VIA CERTIFIED MAIL,</u>
<u>RETURN RECEIPT REQUESTED</u>
<u>VIA FIRST CLASS U.S. MAIL and</u>
<u>Email:</u> tracey.lewis@syn-cap.com

Mr. Gary Polland, Esq.
Gary Polland & Associates
2211 Norfolk Street, Suite 920
Houston, TX 77098

Re:    Northside Exxon Corporation, Demand For Immediate Refund

Dear Mr. Polland:

This Firm has been retained by Northside Exxon Corporation ("Northside") with regard to the performance bond refund owed to it by your client Synergy Capital Corporation ("Synergy") and its CEO, Ms. Tracey Lewis. The purpose of this letter is to demand immediate refund of the $375,000.00 deposit paid to Synergy, and if the money is not receive within ten (10) days of the date of this letter a lawsuit shall be brought against Synergy, Tracey Lewis personally, and all other individuals that may have benefited from the funds that were to be held in trust by Synergy. Please direct all future communication regarding this matter to me.

On or about June 25, 2014, my client's representative, Yasir Khan, sent Ms. Lewis two (2) payments totaling $375,000.00. These payments were paid to Synergy as a "deposit" and pursuant to the terms of a "Financial Services & Deposit Agreement" (hereinafter "Agreement"). The Agreement, which was also signed by the parties in late June 2014, represented Synergy's commitment as a private equity firm to provide a Standby Letter of Credit ("SBLC") to help fund my client's purchase of gas stations in the Atlanta, Georgia area. The total of the SBLC to be extended by Synergy pursuant to the Agreement was $3,850,000.00. Pursuant to Sections 2(I) and 4 of the Agreement, the deposit of $375,000.00, or "8.934% of the face value of the SBLC" was allegedly required in order to consummate the parties' transaction. Section 3(D) of the Agreement also included provisions for the refund of that deposit in the event of certain circumstances. One of

1


EXHIBIT
D

those circumstances was the failure to have the SBLC funded within 120 days. Synergy failed to obtain the funding within 120 days.

On or about December 7, 2014, my client expressly invoked the provisions of Section 3(D) of the Agreement and began to inquire as to what needed to be done to process the refund of the $375,000.00 deposit. On December 12, 2014, in an e-mail to Mr. Khan, Ms. Lewis acknowledged that such a request had been made and that Synergy was in the process of retrieving the money from its bank. On December 15, 2014, Mr. Khan informed Ms. Lewis that he had already sent a request for the refund to Synergy in writing via certified mail (as requested) on December 9, 2014.

On December 17, 2014, however, Ms. Lewis sent another e-mail to Mr. Khan stating that "Due to the parameters of the receiving bank Scotia bank, the structure of the performance bond has to be terminated due to the borrower not meeting the minimum requirements for issuance." It also laid out a new process allegedly required for "termination and refund," despite the prior legally binding Agreement. The e-mail promised an "expedient" resolution and stated in its last sentence that "This correspondence is an informal acknowledgement of our intent and will be followed by a formal summation by our legal department." Nowhere in the Agreement, was Northside's deposit described as a "performance bond". At no time was Synergy permitted to unilaterally alter the terms of the Agreement.

Almost a week later, on December 22, 2014, Ms. Lewis sent an e-mail in which she told Mr. Khan that Synergy's legal team was in the process of "preparing the refund contract" for review by Scotia Bank and would have a copy of it sent to Mr. Khan on December 29, 2014. On December 30, 2014, Ms. Lewis sent Mr. Khan a draft of a "Termination Agreement" and told him that the refund process could take from 10 to 90 days to complete. She also informed him about various alleged fees and charges (one of which was up to $3,000.00) which were also not disclosed or agreed to in the original Agreement. Nevertheless, the Termination Agreement was approved by all parties on or about January 5, 2015.

Twenty-one days later, on January 26, 2015, Mr. Khan requested a status update on the refund from Ms. Lewis. She responded that there was nothing she could do to speed the process and said that contacting the bank "irritates the bank officers". She also revised the earlier timeline without explanation, saying this time that the refund would take "30-90 days from when the bank received the executed refund contract". She stated that the bank had received the refund contract on January 8, 2015.

Thereafter, having heard nothing further for many weeks, on April 1, 2015, Mr. Khan requested a conference call with Ms. Lewis. When this also did not produce a resolution, Ms. Lewis gave Mr. Khan the name of your law firm on April 16, 2015 and suggested that he contact you for further assistance. It is my understanding that you did not respond to Mr. Khan or his representatives for several weeks. Around the same date

as Ms. Lewis gave Mr. Khan your name, she also signed a letter to Northside warning that the refund process was going to take longer than normal and listing multiple excuses as to why the refund had not been processed quickly. At this point in time, it became readily apparent that Synergy and/or Ms. Lewis had not held the deposit money in trust, but had likely converted the money to the company/her personal benefit.

As you know, my client has numerous legal theories of recovery against Synergy and Ms. Lewis, if the demand in this letter is not strictly adhered to and the money is not returned within ten (10) days of this letter.

This letter is my client's final attempt to resolve this matter without resorting to court intervention to recover its deposit. My client's patience in this matter has been exemplary up to this point, but there is no rational reason why a simple refund of a deposit fund (which should have remained untouched in a corporate trust account) should take the nearly six (6) months beyond the date of Northside's demand for a refund of its money.

My client has given the undersigned plenary authority to take whatever legal means available to recover the funds. Northside will not hesitate to pursue any and all claims against your clients and any additional parties for additional torts, including uncapped, punitive damages as allowed by law. Punitive damages under Georgia law can act as a multiplier of actual damages, and if it is shown that Synergy and Ms. Lewis did, in fact, convert the money, my client will be seeking ten (10) times the deposit sum or $3,750,000.00 Furthermore, this letter is my client's final notice that in the event that it is forced to file suit to recover this money, it shall seek and will be entitled to payment of all of its attorney's fees pursuant to O.C.G.A. § 13-1-11 and/or 13-6-11. In order to avoid such a claim, the funds described herein must be paid to my client within ten (10) days of your receipt of this letter.

Please advise Synergy and Ms. Lewis to return Northside's deposit funds in the amount of $375,000.00 within ten (10) days. If I have not received the funds from you or Synergy within that time period, I will advise my client to evaluate its multiple options to recover its deposit through litigation. I will also be copying this letter directly to your clients as a courtesy, in the event that you no longer represent their interests. Please contact me immediately if you or your clients have any questions about this letter.

GOVERN YOURSELF ACCORDINGLY.

Very truly yours,
THE HILBERT LAW FIRM, LLC

Kurt K. Hilbert, Esq.

3

KRH

cc:     Northside Exxon Corporation
        Synergy Capital Corporation: 11111 Katy Frwy Suite 910, Houston, Texas 77079
        Ms, Tracy R. Lewis: Synergy Capital Corporation, 11111 Katy Frwy Suite 910, Houston, Texas 77079

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

NORTHSIDE EXXON CORPORATION,          :
                                       :
          Plaintiff,                   :
                                       :          CIVIL ACTION
vs.                                    :
                                       :          FILE NO. 2015CV264449
SYN-CAP INC., doing business as Synergy :
Capital Corporation, TRACEY R. LEWIS, :
doing business as Synergy Capital      :
Corporation, and JOHN DOE #1-3,        :
                                       :
          Defendants.                  :
                                       :
_____:

## NOTICE OF FILING AFFIDAVITS OF SERVICE OF PROCESS

COMES NOW Plaintiff NORTHSIDE EXXON CORPORATION, by and through counsel, and shows this Honorable Court that service has been perfected on the following:

1. Syn-Cap, Inc. via is registered agent on September 17, 2015 in Houston, Texas. See attached Affidavit of Service attached hereto as Exhibit "A" and incorporated herein by reference.

2. Tracey Lewis at 363 N. Sam Houston R, Houston, Texas 77060 via substitute service through person authorized to accept personal service for Tracey Lewis on September 17, 2015. See attached Affidavit of Service attached hereto as Exhibit "B" and incorporated herein by reference.

1

Respectfully submitted, this 25ᵗʰ day of September 2015.

THE HILBERT LAW FIRM, LLC

_____
KURT R. HILBERT
Georgia Bar No. 352877
*Attorneys for Plaintiff*

The Terraces North, Suite 900
400 Perimeter Center Terrace NE
Atlanta, Georgia 30346
T: (770) 551-9310
F: (770) 551-9311
E: khilbert@hilbertlaw.com

2

# AFFIDAVIT OF SERVICE

| Case: 2015CV264449 | Court: Superior Court of Fulton County, State of Georgia | County: Fulton, GA | Job: 629515 |
|---|---|---|---|
| Plaintiff / Petitioner: Northside Exxon Corporation | | Defendant / Respondent: SYN-CAP INC., doing business as Synergy Capital Corporation, TRACEY R. LEWIS, doing business as Synergy Capital Corporation, and JOHN DOE #1-3 | |
| Received by: Interstate Process Service LLC | | For: Phoenix Legal | |
| To be served upon: Syn-Cap, Inc. | | | |

I, Sam Torres, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

Recipient Name / Address: Syn-Cap, Inc., 363 N Sam Houston Pkwy Ste 1100-128, Houston, TX 77093

Manner of Service: Registered Agent, Sep 17, 2015, 4:18 pm CDT

Documents: Summons and Verified Complaint (Received Aug 20, 2015 at 8:00am), Signed Order Appointing Special Process Server (Received Aug 20, 2015 at 8:00am)

Additional Comments:
1) Successful Attempt: Sep 17, 2015, 4:18 pm CDT at 363 N Sam Houston Pkwy Ste 1100-128, Houston, TX 77093 received by Robin Doe, Authorized to accept, Age: 30; Ethnicity: African American; Gender: Female; Weight: 120; Hair: Black;

_____   9/17/2015
Sam Torres                         Date
SCH 9584, Exp. 3/31/2018
Harris County, Texas

Interstate Process Service LLC
1100 Poydras St Suite 2990
New Orleans , LA 70163-2900
800-940-9857

Subscribed and sworn to before me by the affiant who is personally known to me.

_____
Notary Public

9/17/15
_____
Date          Commission Expires

SHANE SWATZELL
Notary Public, State of Texas
My Commission Expires
September 30, 2018

EXHIBIT
"A"

# AFFIDAVIT OF SERVICE

| Case: | Court: | County: | Job: |
|---|---|---|---|
| 2015CV264449 | Superior Court of Fulton County, State of Georgia | Fulton, GA | 629533 |

| Plaintiff / Petitioner: | Defendant / Respondent: |
|---|---|
| Northside Exxon Corporation | SYN-CAP INC., doing business as Synergy Capital Corporation, TRACEY R. LEWIS, doing business as Synergy Capital Corporation, and JOHN DOE #1-3 |

| Received by: | For: |
|---|---|
| Interstate Process Service LLC | Phoenix Legal |

| To be served upon: |
|---|
| Tracey R Lewis |

I, Sam Torres, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

Recipient Name / Address: Tracey R Lewis, 363 N Sam Houston E, Houston, TX 77060

Manner of Service: Substitute Service - Business, Sep 17, 2015, 4:24 pm CDT

Documents: Summons and Verified Complaint, Signed Order Appointing Special Process Server

Additional Comments:
1) Unsuccessful Attempt: Aug 29, 2015, 8:18 pm CDT at 5018 Antoine Dr Apt 126, Houston, TX 77092
This is a PO Box location.

2) Unsuccessful Attempt: Sep 14, 2015, 10:25 am CDT at 9210 Friendly Rd, Houston, TX 77093
I arrived at the location, knocked on the door and received no response. I left a note on the door stating that I am attempting to make an important delivery to this location and included my phone number requesting a return phone call to reschedule their delivery.

3) Unsuccessful Attempt: Sep 15, 2015, 7:23 pm CDT at 9210 Friendly Rd, Houston, TX 77093
I arrived at the location, knocked on the door and received no response. I left a note on the door stating that I am attempting to make an important delivery to this location and included my phone number requesting a return phone call to reschedule their delivery. No answer at neighbor's door.

4) Successful Attempt: Sep 17, 2015, 4:24 pm CDT at 363 N Sam Houston E, Houston, TX 77060 received by Robin Doe, Authorized to Accept. Age: 30; Ethnicity: African American; Gender: Female; Weight: 120; Hair: Black;



_____ 9/17/2015
Sam Torres                Date
SCH 9584, Exp. 3/31/2018
Harris County, Texas

Subscribed and sworn to before me by the affiant who is personally known to me.

_____
Notary Public
9/17/15

_____ _____
Date                      Commission Expires

Interstate Process Service LLC
1100 Poydras St Suite 2990
New Orleans, LA 70163-2900
800-940-9857



SHANE SWATZELL
Notary Public, State of Texas
My Commission Expires
September 30, 2018

EXHIBIT

"B"